Tompkins, J.,
delivered the opinion o-f the Court.
Price, the plaintiff in the Circuit Court, sued Perry and Ruggles, in ejectment, for 250 acres of land, part of a tract known by the name of the Mine a Burtori tract, and had judgment for §8,000, from which judgment this appeal is taken. Price claims title, first, b.y a survey of 1,153 arpents 32 2-3 perches, made by Antoine Sou-lard, in part, and concluded by James Maddin, in the year 1799, for Moses Austin ; Second, by a grant for the same quantity of land, made to Moses Austin, dated July, 1802; third, a deed of Mortgage from Moses Austin to the Bank of St. Louis, dated March 11th, 1818, for 640 acres, part of the Mine a Burton tract, to include Durham Hall; fourth, a deed from the- Bank to Charles R. Ross, for all Moses Austin’s right, except some few lots therein mentioned y fifth, a deed from Hammond, Easton and Simpson, authorizing Ross, under order of the Bank, to’sell to Price. The mortgage from the Bank to Austin, bears date as above stated, March 11th, 1818. The deed from the Bank to Ross bears date April 19th, 1820 ; that from Hammond, Easton and Simpson to Ross, and that from Ross to Price, are, respectively, dated December 21, 1820. The defendants claim, by a deed from Moses Austin to James Bryant andMartin Ruggles, dated 28th August, 1819, and by a deed from Bryant to William and John Perry, dated 13th December, 1821. Tbe following errors are assigned:. First. A general assignment.. Second. The Court erred, .in permitting to go in evidence to the jury, the plat, and the annotations thereon., copied fiom a hook in the office of the Surveyor of public lands in Illinois, Missouri and Arkansas, with the certificates annexed. Third. The Court erred, in permitting to be read to the jury, the deed of mortgage from Moses Austin to the President, Directors and Company of the Bank of St. Louis.. Fourth. The Court erred in permitting to go in evidence to the jury,, the paper, purporting to be a deed from the President, Directors and Company of the Bank of St. Louis, to Charles R. Ross, and also in allowing to go to the jury, the verbal evidence, and extracts from the proceedings of the Board of Directors, as the same appear of record, touching the execution of' the said supposed deed. Fifth. The Circuit Court erred, in permitting to go in evidence to the jury, the deed from Hammond, Simpson and Easton to. Charles Ross. Sixth. The Circuit Court erred in permitting to go in evidence, the deed from Charles Ross to R. H. Price. Seventh.' The Court erred, in permitting to go in evidence to the jury, a copy from the hooks of the Recorder of land titles at St. Louis, purporting to he a grant of lands (rom the Spanish intendant, Morales, to Moses Austin, and also, in permitting to go to the j ury, the évidence which appears to be on the record, touching the said supposed grant. Eighth. The Circuit Court erred, in charging and instructing the jury, *461 on the prayer of the plaintiff as follows, viz: first, that the paper, purporting to he a deed from Moses Austin and wife to Bryant and Buggies, given in evidence in this ease, by the defendants, does not divest any title which the President, Directors an^ Company of the Bank of St. Louis, acquired by virtue of the deed from Moses Aus-. tin to them. Second. That the paper, purporting to be the copy of a deed from R. H. Price to the Trustees of the President, Directors and Company of the Bank of Edwardsville, given in evidence in this case by the defendants, does not show such a subsisting outstanding title as will bar the plaintiff in this action. .Third. That the settlement mide between Charles R. Ross, as agent of the Bank of St. Louis, and Moses Austin, and the subsequent payment of the balance to Robert Simpson, cannot operate to defeat any title previously acquired by R. H. Price to the premises in dispute.
Ninth. The Circuit Court erred in rejecting all and every one of the instructions to the jury, moved for by the defendants, as the same appear in the record, and in refusing to give the same instructions, or any of the.m ; which said instructions, as moved for, are as follows: (see the instructions required by the defendants in the hill of exceptions). Tenth. The Circuit Court erred in stopping the defendant’s counsel in addressing the jury, and endeavoring to show in argument that, although a copy of record of a supposed grant from the book of the recorder of land titles, was admitted in evidence, still no grant had been made by the Spanish government to Moses Austin ; and in prohibiting said counsel from going on in that course of argument. Eleventh. The Circuit Court erred in receiving and permitting to go to the jury, the testimony of Mr. Cozens, a witness who swore that on a former trial of this cause, John Rice Jones, who is now deceased, was sworn as a witness, who then deposed that he had an interest in the Mine a Burton tract; that he went to New Orleans and produced a grant from Morales, the intendant, &c., as aforesaid, to the said Mosos Austin. Twelfth. The Circuit Court erred in refusing to set aside the verdict, and to grant a new trial.
It will he more convenient to consider under one head the second and seventh errors assigned, viz: that the Court erred in permitting to go in evidence to the jury the plat and annotations thereon, copied from a book in the office of the Surveyor of Public Lands, &c., with the certificates annexed, and in permitting to go in evidence to the jury a copy from the hooks of the Recorder of Land Titles at St. Louis, purporting to be a grant of lands from the Spanish intendant, Morales, to Moses Austin, and also in permitting to go to the jury the evidence which appears to be on the record touching the said supposed grant. Qf these two supposed errors, it is enough to say that the plaintiffs in error, claiming under the same grant, are, in the opinion of the Court, precluded from objecting to the claim of the defendant in error: See 10 Johnston, 294, Jackson ex. Dem. Brown v. Henman, 1 Coxe, 232, Dem. ex. Dem. McDonald v. Ring and King. The last case is very strong; the defendant there was stopped from questioning or gainsaying the plaintiff’s title,derived from the same source as his own. Of the third error assigned, nothing will he said, as the members com-, posing the Court do not agree in opinion. The fourth error is, that the Circuit Court erred in permitting to go to the jury the deed from the President, Directors & Co. of the Bank of St. Louis to Charles R. Ross, &c. This deed, it appears from the evidence saved in the bill of exceptions, was signed by Risdon H. Price as President, with a plaster of wax affixed at the end of his signature, and attested by Wil liam Hughes. It recited that Charles R. Ross had, as agent of the President, &c., of the. *462 Bank of St. Louis, in pursuance of a resolution of a Board of Directors of said Bank, passed on the 17th of March then last past, 1820, purchased at Sheriff’s sale all Moses Austin’s interest in a tract of land of one league square. By it the Bank authorized Ross to sell all its interest in the same under the direction of Price, Hammond, Easton and Simpson. On the deed was endorsed, “ The undersigned Directors of the Bank of St Louis, hereby'ratify and confirm the execution of the foregoing instrument of writing.. St.. Louis, 17th April, 1820.” This endorsement was signed by seven Directors. The hand writing of the subscribing witness was' proved, and the signatures of the Directors, also. It was also in evidence that two witnesses, who had, in the character of Attorney and Director, been often about the Bank, and in those characters had seen how its business was transacted, had not Jjnown the Bank to have any particular seal till 1822. One witness stated that he had received one power of attorney from the Bank, and had seen another, on each of which there was a plaster of wax, similar to that affixed to said deed to Ross, but of no particular shape, and without any visible impression. The act incorporating the Bank says, they (the President, Directors and Company of the Bank of St. Louis,) and their successors and assigns, by the name of the President, &c., .may have a common seal, and may make, change and alter the same at their pleasure. Corporations have, as incident to them, a common seal: See Bac. p. 9, here it is given by the,statute. 1 Tor a corporation being an invisible body, cannot manifest its intention by any personal act or oral disedurse, and speaks o.nLy by its common seal: See also the authorities there cited.
It seems to have been admitted by both parties,, that a seal was necessary to pass an interest from the Bank. For although (see same book and page) particular members may express their private consents to any act by words or signing their names, yet this does not bind the corporation j it is the fixing of the seal,.and that only, which unites the several assents of the individuals who compose the community, and makes one joint assent of the whole. In one case, indeed, it was decided that the agreement of the majority of a corporation being entered in the corporation books, though not under the corporate seal, will be decreed in equity. But even this has been otherwise held : See notes in Bacon, same page.
It is necessary to inquire, then, what is this common seal, so necessary to pass a», interest from the corporation ? The statute provides that the. President, Directors and Company of the Bank of St. Louis, may have a common, seal, and may make, change and. alter the same, at their pleasure. What, then, is the seal ? It surely cannot be the wax, or other tenacious substance, attached to each particular instrument of writing executed by the corporation. It is and can be nothing else than the instrument used to make an impression on the tenacious substance attached to deeds, executed by the corporation, and when in common parlance we say a deed has affixed to it the seal-of the corporation, we mean nothing more than the impression of that seal on the wax. Gilbert, speaking, of attesting the' seals of private Courts or private persons;, (page 16,) says, “ though part of their credit arises from.the oath, that gives an. account of their sealing, yet another part of their credit arises from a distinction of their own impression;, for (as I said) anciently every family had its own proper seal, as it is now in corporations, and by this they distinguish their manner of contracting on.e from the Other, and. by false impressions of the seals they discovered a counterfeit contractand, therefore, it was not the oath,,.but the impression of the seal accompanying it, that made up the complete credit of the *463 instrument.” While the law confers such privileges and immunities on bodies corporate, it imposes some restrictions, and if they avail themselves of the first, they must submit to the latter. The charter says the Bank may have a common seal, and may make, change and alter the same at their pleasure. But if the corporation wishes to contract by deed, it must have a common seal; for it cannot execute a deed by any other means than by its seal. The adoption of a seal is the act of the corporation, and not that of a member of the corporation, and if a change is made in its seal, that change must equally be the act of the corporation. Had the corporation adopted a seal, it seems that some entry of such adoption would have been made in its books, and by that entry the fact might have been proved. For though private persons may make the impression with any thing, yet corporations are held to the ancient strictness. Public convenience requires it. The testimony in this case proves, as satisfactorily as a negative can be proved, that the Bank, at the time of the execution of the deed to Charles R. Ross, had no seal. The deed, in the opinion of the Court, is void.
It is the opinion of this Court, that nominal damages only should have been givers in this case, as special damages were not claimed. The judgment of the Circuii Court is reversed.